**Soren SORENSON, Plaintiff and Respondent,**

**v.**

**Lloyd J. LESLIE and Arthur C. Benton, Co-Partners dba Leslie & Benton, Contractors, Defendants and Appellants.**

**Civ. No. 8701.**

Supreme Court of North Dakota.

April 22, 1971.

Waldron, Kenner & Halvorson, Minot, for defendants and appellants.

Joseph P. Stevens, Minot, for plaintiff and respondent.

ERICKSTAD, Judge.

This is an appeal by the defendants, Lloyd J. Leslie and Arthur C. Benton, co-partners, doing business as Leslie & Benton, Contractors, from a judgment of the district court of Ward County dated June

4, 1969, in the sum of $3,575.80, including costs and disbursements. The defendants, whom we shall refer to as Leslie & Benton, demand a trial de novo in this court, the case having been tried in district court without a jury.

The action was initiated by the plaintiff, Soren Sorenson, by summons and complaint dated August 3, 1966.

The allegations of the complaint follow:

## "I.

"That on or about the 1st day of September, 1965, pursuant to bids for the installation of a new roof on a building to be built by the defendants, on Lot Five (5), Block Twenty-one (21), Tolley's Plat of Kenmare, North Dakota, one Otis Gay, dba Crosby Roofing Company, contracted with the defendants for the construction of such roof at an agreed price of $3,150.00.

## "II.

"That thereafter and before such work was commenced, the said Otis Gay, dba Crosby Roofing Company, sold and assigned such contract to this plaintiff, and that this plaintiff pursuant to such contract, furnished materials and labor for the construction and installation of such roof.

## "III.

"That the defendants had the general contract for the construction of such building and such work was done and completed, by the plaintiff, with the knowledge, consent and approval of the defendants, and is of the reasonable value of $3,150.00.

## "IV.

"That although the work contracted for has been completed, the defendants on demand, failed, refused and neglected to pay the plaintiff therefor.

"WHEREFORE, Plaintiff prays judgment against the defendants and each of them, for the sum of $3,150.00 with interest according to law, from May 1, 1966, and for his costs and disbursements herein."

The allegations of the answer, dated August 12, 1966, follow:

## "FIRST DEFENSE

"That the Defendants generally and specifically deny each and every allegation, matter and thing contained in the Complaint of the Plaintiff and require that the Plaintiff be put on its proof as to each and every allegation thereof.

## "SECOND DEFENSE

"That a new building was constructed on Lot 5, Block 21, Tolley's Plat of Kenmare, North Dakota, for Carl W. Petersen, the owner thereof; that Defendants performed certain of the construction work thereon but that the installation of roof, the painting, the plumbing, the wiring and the floor tiling were all omitted from the contract work to be performed by Defendants; that the installation of roof, the painting, the plumbing, the wiring and the floor tiling were all performed by the owner, Carl W. Petersen, or under contracts negotiated by Carl W. Petersen, the owner, with others.

## "THIRD DEFENSE

"That Otis Gay, d/b/a Crosby Roofing Company, did submit a bid for installation of a new roof on a building being built on Lot 5, Block 21, Tolley's Plat of Kenmare, North Dakota, and owned by Carl W. Petersen; that said bid was submitted in the sum of Three Thousand One Hundred Fifty Dollars ($3,150.00) but that the same was never accepted; that the Defendants are informed and believe that Otis Gay, d/b/a Crosby Roofing Company, orally contracted the installation of the new roof with the owner, Carl W. Petersen, for a price of Three Thousand One Hundred Twenty Dollars ($3,120.00); that the roof installation contracted to be per-

formed by Otis Gay for Carl W. Petersen was prepaid to Otis Gay by Carl W. Petersen in that Otis Gay was indebted to Carl W. Petersen on a Five Thousand Dollar ($5,000.00) Promissory Note which was then past due and owing.

"FOURTH DEFENSE

"That these Defendants know that neither the Plaintiff nor Otis Gay performed the contract for the installation of the new roof; that these Defendants and others at the request of Carl W. Petersen, the owner, did provide material and furnish labor on the roof in question in December of 1965 because of the condition that same was in at that time; that if Otis Gay had a contract with Carl W. Petersen for the installation of a new roof, the same was breached by failure in performance.

"WHEREFORE, The Defendants pray that the Complaint of the Plaintiff be in all things dismissed and that these Defendants have their costs and disbursements herein and such other and further relief as to the Court may seem proper."

At the close of the trial, counsel for Leslie & Benton moved to amend the answer as follows:

"MR. KENNER: Your Honor, I would like to move that the Defendants be permitted to amend the answer to conform to the proof, in that we would like to enlarge upon the defenses in the answer by adding a further separate defense as follows: That the unpaid five thousand dollar note, promissory note, of Otis Gay which is in evidence as Exhibit 'A' was delivered by Carl Petersen to the Defendants in December of 1965 and assigned by implication to the Defendants; that the Defendants elected to offset the roof contract sum owed to Otis Gay as credit toward payment of said promissory note; and that said promissory note, Exhibit 'A', in those proceedings, was held by the Defendants until after the commencement of this action

when it was delivered to the office of the attorney for the Defendants in this action, and subsequently delivered as an exhibit in the records of this Court."

This motion was granted when counsel for the plaintiff indicated that he had no objection to the amendment, although he questioned the phrase "to conform to the proof."

Because a trial de novo has been demanded, we are required to determine the facts, and this we have tried to do.

This is a case, however, where the testimony of the opposing parties is in conflict, and one which might well have been used as an example in support of those who favored the elimination of trial de novo in this court in the 1971 session of the Legislature.

Incidentally, although of no legal significance in this case, the 1971 session of the North Dakota Legislature, by Senate Bill No. 2252, repealed Section 28–27–32, N.D. C.C., which provided for a trial de novo in this court.

In the instant case, Sorenson testified that although Mr. Otis Gay bid the Red Owl job with Leslie & Benton, he, Sorenson, had to buy all the material, pay all the help, the Workmen's Compensation, Social Security, and the Internal Revenue in connection with the job. He further testified that he returned to Minot every night and that if Mr. Leslie wanted to know anything he called him on the telephone, which was practically every day while the job was in progress, and that on one occasion Mr. Sorenson asked for partial payment, but that he was informed that he should wait for his payment until the job was completed and that only after the job was completed was he informed by Mr. Leslie that he must collect from Mr. Petersen, the owner of the building.

Mr. Sorenson testified that he was personally present on the job site at Kenmare a great amount of the time and that a major part of the roofing contract was

performed after the building was opened and being operated as a Red Owl Store in the winter of 1966.

The office manager for Leslie & Benton, namely Gail Doede, testified that she answered all incoming telephone calls at Leslie & Benton and recorded all messages and the name and number of the person calling when he would give that information, which record was introduced into evidence as Exhibit I. She further testified that she did not remember talking to Mr. Sorenson on the telephone and that she did not record any messages from Mr. Sorenson in the period during which the building was being constructed by Leslie & Benton. The Exhibit covered a period of time from August 4, 1965, to December 5, 1967.

Mr. Carl Petersen, the owner of the building, testified that he delivered the $5,000 note of Otis Gay to Mr. Leslie "about December of '65" and that he later picked up the note from Mr. Leslie when the litigation was started and delivered it to the law office of his counsel. In regard to the completion of the roofing, Mr. Petersen testified that it was completed before the store opened and that the store opened on the 19th of January 1966.

The office manager for Leslie & Benton testified that the work was completed by February 1, 1966, as indicated by Exhibit F, which is allegedly a copy of a recapitulation of the additional charges and credits that were over and above the original contract.

This is all to be considered in light of the testimony of Mr. Gay that long before February 1966 he had relinquished his interest in this contract and the roofing business done under the name of Crosby Roofing to Sorenson and that a copy of the written assignment dated the 15th of February 1966 was thereafter sent to the defendants.

Leslie & Benton, however, contend that they did not receive this notice of assignment until May 24, 1966, as indicated by the postmark on an envelope which they assert contained the Gay assignment to Sorenson.

The office manager for Leslie & Benton conceded on cross-examination that Leslie & Benton had received from Mr. Petersen, as indicated by Exhibit 2, a payment of $634.68 on the roof and roofing installation.

Lest it should seem peculiar that Mr. Leslie did not testify, it should be noted that the office manager testified that Mr. Leslie died on December 23, 1967, which was prior to the trial of this case on January 8, 1969.

Inasmuch as the trial court had the opportunity to see and hear the witnesses and thus was able to note their demeanor and judge their credibility, in light of the conflicting testimony of this case we must give appreciable weight to the trial court's findings.

The trial court's findings prevail over the trial court's memorandum opinion, but since the trial court's findings are consistent with its memorandum opinion and because of what the trial court said in its memorandum opinion, we quote from it at this time.

"It is my opinion that the evidence establishes that Otis Gay did contract with defendants for the installation of a roof on a new building which defendants were constructing for Carl W. Petersen, and that Otis Gay assigned the contract to plaintiff; and the evidence also establishes that plaintiff installed the roof in accordance with the contract with the knowledge, consent and approval of defendants, and that defendants have refused to pay plaintiff therefor.

"But is plaintiff entitled to payment? Do defendants have a valid and sufficient reason for refusing to pay plaintiff? Or as defendants contend, has Otis Gay already been 'paid'? Counsel for de-

fendants, in his letter dated January 9, 1969, states it this way:

'It seems to me that the major issue of this case is: Did the delivery of the unendorsed Promissory Note by Carl W. Petersen to the Defendant for the purpose of using same as an offset and after receipt of valid consideration therefor entitle the Defendant to offset the roofing contract sum owed Otis Gay against this Promissory Note, which was then in the possession of the Defendants?'

"The promissory note, which is plaintiff's Exhibit A, bears no endorsement of transfer from Carl W. Petersen to defendants. Neither, it is parenthetically observed, does it bear any endorsement of payment, notwithstanding the alleged setoff described in defendants' amendment to their Answer quoted above. This transaction antedated the adoption of the Uniform Commercial Code in North Dakota. At the time of this transaction the effect of a transfer of an instrument without endorsement was covered by Sec. 41-04-20 N.D.C.C., which provided as follows:

'*Transfer Without Endorsement; Effect of.* Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferor had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferor. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made.'

"In my opinion there is something slightly surreptitious about the alleged transfer of the promissory note by Carl W. Petersen to defendants. Defendant's office manager, Gale Doede, testified she had never seen the note until the day of the trial. After plaintiff commenced his action against defendants, it was Carl W.

Petersen, and not defendants, who delivered the promissory note to defendants' attorneys. It appears to me that the conduct and action of Carl W. Petersen, if not of the defendants also, is circumventive."

The findings of the trial court are consistent with its memorandum opinion.

The findings follow:

"I.

"That the defendants, Lloyd J. Leslie and Arthur C. Benton, were at all times material herein, engaged in the general construction business with offices and principal place of business at Minot, North Dakota.

"II.

"That one Carl Petersen contracted with the defendants, for them to construct a business building for him upon real estate owned by him, in the city of Kenmare, North Dakota.

"III.

"That one Otis Gay was engaged in the business of constructing and repairing roofs on buildings, and the defendants contracted with him to construct the roof on such building at an agreed price of $3,150.00.

"IV.

"That prior to the commencement of the roofing of such building, the said Otis Gay assigned such contract and agreement to the plaintiff herein, and the plaintiff with knowledge and consent of the defendants, did install the roof on such building.

"V.

"That during the course of the construction of the roof on such building, the plaintiff sought advances on payment of such contract, but was deterred in receiving any advances upon defendants' assurance that the entire contract would

be paid in full upon full completion of the roof. That such roof was fully completed by June 1, 1966.

#### "VI.

"That after completion of the roof construction, the defendants refused to pay the plaintiff for such work, claiming that Carl Petersen had a note from Otis Gay for $5,000.00.

#### "VII.

"That from time to time during the construction of such building, the defendants received advances from Carl Petersen as the work progressed, including some payments for partial completion of the roof on such building.

#### "VIII.

"That the aforesaid promissory note was never endorsed by Carl W. Peterson to the defendants, and the evidence is uncertain as to when there might have been any physical delivery of such note to the defendants, there being no record that came to their knowledge or possession, if at all, until after this action was commenced.

#### "IX.

"That the roof was installed by the plaintiff in accordance with the bid and specifications and no claim or defense is made that it was not as agreed upon.

#### "X.

"That the plaintiff has not been paid the contract price for such contract, in spite of numerous demands for payment."

What we said in a 1967 decision when trial de novo was demanded, wherein we affirmed the trial court's findings, is applicable here.

"We have only the cold record before us. The trial judge hears and sees the witnesses and is in a much better position to pass upon their credibility." Chambers v. Satrom, 154 N.W.2d 913, 915 (N.D. 1967).

Giving the trial court's findings appreciable weight, we affirm the judgment of the trial court.

STRUTZ, C. J., and PAULSON, KNUDSON and TEIGEN, JJ., concur.